# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY LYN STEVENSON, SR | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | CIVIL ACTION NO. 15-5933 |
| | : | |
| GREAT VALLEY SCHOOL | : | |
| DISTRICT | : | |
| **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SANCTIONS AGAINST GLENN H. STEPHENS, ESQ.

Defendant, Great Valley School District ("District" or "Defendant"), by and through its undersigned counsel, respectfully moves this Court for entry of an Order of sanctions against Plaintiff's former counsel, Glenn H. Stephens III, Esq., under 28 U.S.C. § 1927 and the inherent powers of the Court.

## I.    INTRODUCTION

The actions of Glenn H. Stephens III ("Stephens") in this case evidence a course of conduct that easily supports a finding of sanctions. Stephens clearly has lost all objectivity in this matter in which he represented his brother-in-law. Instead of diligently prosecuting this case, Stephens occupied himself with abusing the judicial process by repeated frivolous filings designed to publicly embarrass District employees while forcing the District to incur excessive and unwarranted legal fees. Unsatisfied with the harassing filings he was generating, Stephens also took it upon himself to directly communicate with the District, disparage the District and its employees on the District's own Facebook page and threaten and harass a District employee who refused to cooperate with him.

In preparing this Motion, the District discovered that Stephens was recently sanctioned by the United States District Court for the District of Columbia for misconduct and litigation tactics that are remarkably similar to his actions in this matter. See Steven H. Hall v. Department of Homeland Security, Civil Action No. 1:16-cv-01471 (JEB) (filed December 1, 2016), attached hereto as Exhibit "1". The similarities between the conduct for which Stephens was sanctioned in the Hall matter and the conduct Stephens has engaged in here is striking, and presents strong and convincing evidence that here, as in Hall, Stephens has "intentionally and maliciously disregarded his professional duties…." See Id. at p. 12.

## II.     RELEVANT FACTS

### A.     Stephens Entry Into This Case

As with Hall, this matter also began as a pro se case. On February 24, 2016, Stephens filed an application for admission *pro hac vice* pursuant to Local Rule of Civil Procedure 83.5.2(b) and was sponsored by Sharon R. Meisler, Esquire. By Order dated March 21, 2016, this Court admitted Stephens *pro hac vice* to represent the Plaintiff in this matter. While attorney Sharon R. Meisler sponsored Stephen's *pro hac vice* application, "[i]t was agreed by and between Plaintiff and [Ms. Meisler] that [Stephens] would be acting as Lead Counsel." (Document No. 66, at p. 2).[1]

On May 17, 2016, a status conference was held with the Court. The Court memorialized the status conference by way of an Order entered on May 18, 2016 which directed, in part, that "A status conference shall be held on August 8, 2016, at 2:30 p.m., at the Reading Station, the Madison Building, 400 Washington Street, Reading, Pa." (See May 17, 2016 Order, Document

---

[1]     Documents filed in this matter will be referenced herewith as "Document No _", which will correspond with the numbering of filings in this matter pursuant to the Docket Report.

No. 14).  On the same day, the Court also referred this matter to Magistrate Judge Lloret for purposes of conducting a mediation and supervising discovery.  (See Document No. 16).

**B.    Stephens' Frivolous Filings and Improper Conduct.**

On May 18, 2016, Stephens also filed what he referred to as "Plaintiff's Memorandum on Venue."  See Document No. 15.  In this Memorandum, Stephens raised a host of frivolous legal arguments to request a change in "venue" from the Federal Court in Reading to the Federal Court in Philadelphia even though both courts are within the same venue – the United States District Court for the Eastern District of Pennsylvania.  To justify this request, Stephens argues that the Reading jury pool is different than the Philadelphia jury pool, an inaccuracy which even the most rudimentary investigation would have revealed.  In arguing that the matter should be heard in Philadelphia rather than in Berks County, Stephens made outlandish and unsupported arguments that the City of Reading is "a particularly racist city in the most racist state outside of the South." On May 31, 2016 the District was forced to incur the expense of responding to Stephens' frivolous Motion.  (See Document No. 17).  This Court subsequently denied Stephens' Motion, noting that "Reading and Philadelphia are both located within the Eastern District of Pennsylvania and, therefore, share the same jury pool. In addition to the extent a jury is needed in this case, the jury will be chosen in Philadelphia, while the trial will take place in Reading." (Document No. 32).

On or about June 2016, Stephens filed a First Amended Complaint without seeking leave of Court or written consent from the District.  By Order dated July 13, 2016, this Court had the First Amended Complaint stricken from the docket.  (See Document No. 21).  Subsequently, Stephens requested leave to file a Second Amended Complaint, which the District did not

oppose.  The Second Amended Complaint was filed on July 25, 2016. (See Document Nos. 25, 26)

On August 8, 2016, the District filed a Motion to Dismiss the Second Amended Complaint on the grounds that most of Plaintiff's claims were time-barred and failed to comply with the "short and plain statement" requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b).  A response to the Motion to Dismiss was due by August 22, 2016.  Stephens failed to respond to the District's Motion to Dismiss the Second Amended Complaint until November 18, 2016.[2]

Also on August 8, Stephens failed to attend the Conference with the Court that has been scheduled in the Order dated May 18, 2016.  Stephens actions resulted in counsel for the District incurring the time and expense of attending a conference at which very little could be accomplished.

Rather than respond to the District's pending Motion to Dismiss, Stephens filed a grossly premature "Motion for Summary Judgment on Retaliation (Count II)" on September 8, 2016. (Document No. 33).  Stephens' summary judgment motion was filed before the pleadings were closed and long before the conclusion of discovery in this matter.  Indeed, at the time he filed his Motion for Summary Judgment, no depositions had been taken and Stephens was ignoring attempts by the District to secure proper discovery responses.  Additionally, in filing this Motion, Stephens failed to comply with the Court's procedures.  Specifically, the Court's procedures state that "[a]long with any motion for summary judgment, the parties must file a joint stipulation listing all of the material facts on which the parties can agree."  See Procedures of Judge Jeffrey L. Schmehl, at p.  5.  Stephens never contacted counsel for the District and made

_____

[2]      This Motion to Dismiss is still pending before the Court.

no attempt to stipulate to facts.  Stephens also failed to follow Fed.R.Civ.P. 56(c), and instead of properly supporting the factual assertions in his brief with citations to the record, Stephens attached voluminous exhibits, some of dubious origin, leaving the District to decipher and respond to a rambling, narrative of mixed facts and argument.  It is clear that the premature Summary Judgment Motion was filed for the sole purpose of forcing the District to incur additional legal fees and to divert attention away from Plaintiff's deficient discovery responses.

Less than a week after filing the premature Motion for Summary Judgment and despite not yet responding to the Motion to Dismiss the Second Amended Complaint, Stephens filed a Motion for Leave to File a Third Amended Complaint on September 14, 2016.  (Document No. 36).  This Motion sought to add another Title VII disparate treatment claim to the Second Amended Complaint based on Professional Improvement Plans that Plaintiff received in 2012 and 2013, claims that are undoubtedly outside of the applicable limitations period.  The District was forced to respond to this Motion on September 26, 2016.  (Document No. 40).

It should be noted that filing frivolous motions to amend and serial motions seeking repetitive relief before previously filed motions could be ruled upon were some of the vexatious litigation tactics for which Stephens was sanctioned in Hall.  See Hall, at pp. 7 ("rather than seek to vacate the dismissal of the case or wait for the imminent hearing to discuss the same, Stephens filed a motion to amend the Complaint on September 26, though he failed to attach any such revised complaint to the motion, as required by the local rules"); 8 ("Stephens also failed to wait for the Court to rule on this motion before inexplicably filing a motion for default judgment against Dettling on October 8, 2016."); 9 ("Beyond all reason, he also attempted to file another amended complaint six days later, which this Court again struck."); 10 ("Before that hearing, however, Stephens filed yet another motion, this time to purportedly supplement the amended complaint that the Court had already stricken from the record."). Stephens' vexatious conduct caused the Hall Court to remark that

*"[t]his unbelievable motions activity – typically seen only by pro se litigants with no conception of the rules of civil procedure – forced the Court to issue another Minute Order on October 11…"* See Hall at pg. 8 (emphasis added).

On September 12, 2016, counsel for the District sent the Court a letter requesting a telephone conference to address the Plaintiff's failure to respond to discovery and copied Stephens and Ms. Meisler on the letter by email. On September 13, 2016, this Court entered an Order scheduling a conference call for September 14, 2016 at 3:30 p.m. and directed that Stephens "shall initiate the telephone conference call." (See Document No. 35). At 10:00 am on September 14, Stephens sent the Court a lengthy email making numerous derogatory statements about the District and requesting that the conference call be postponed for a week. See September 14, 2016 email attached hereto as Exhibit "2". The Court denied Stephens' request and Stephens responded by not placing the call but waiting until 3:30 pm and then advising everyone that he did not have the ability to place the call. See Email attached hereto as Exhibit "3". The Conference call was rescheduled for September 15 at 3:00 pm. See Email attached hereto as Exhibit "4".

On September 15 at 2:57 pm Stephens emailed the Court and Counsel stating that "Please bear with me, this is my first live attempt at doing so on my Iphone after several experiments earlier." See Email attached hereto as Exhibit "5". At 3:10 pm, Stephens emailed the Court and counsel "Plaintiffs' Motion for Sanctions Pursuant To Fed. R. Civ. P. 11 and Local Rule 83.6.1" seeking sanctions against the District and its counsel based on the allegation that "[o]n September 12, 2016, the Defendant's Counsel Mr. Kristofco communicated *ex parte* with the Court." See Motion for Sanctions attached to the email at Exhibit "6". It was only after Stephens had emailed out this frivolous Motion that he placed the conference call more than 10

minutes late[3].   Stephens then dominated the call with nonsensical explanations of his misconduct, depriving the District the opportunity to raise its concerns.   The Court referred the parties back to Judge Lloret to resolve the open discovery dispute.   (See Document No. 38).

On September 23, 2016, over a week later, Stephens elected to actually file a slightly different version of the Motion for Sanctions with the Court.   (See Document No. 39).   In this iteration of his Motion for Sanctions, Stephens provided a litany of frivolous arguments, including false claims that District Counsel Mr. Kristofco had engaged in bad faith *ex parte* communications with the Court and unsupported assertions that Mr. Kristofco had engaged in "many falsehoods" in its communications with the Court.   Stephens failed to explain how the September 12 letter (which was submitted in accordance with the Court's procedures) could be an *ex parte* communication when Stephens was copied on the email which transmitted the letter to the Court.   Among the most outlandish of his arguments is chiding the Court for purportedly violating Rule 2.9(a) of the Pennsylvania Rules of Professional Conduct by scheduling the conference call.   (See Document 39, at p. 5).   He requested that this Court require Mr. Kristofco to personally pay him for his fees for 31.6 billable hours at his Laffey rate of $506 per hour ($15,989.60).   (Id. at pg. 13).   The District was forced to incur the time and expense of responding to this utterly frivolous Motion on October 7, 2016.   Stephens' Motion was denied on October 11, 2016.   (See Document No. 45).

The Court should note that Stephens advanced the same type of frivolous arguments in Hall.   See Hall at pg. 7 ("He also referred to her previous motion to disqualify him as an *ex parte* communication with this Court, even though he had been mailed a copy...").

---

[3] This sequence of events surrounding this conference call demonstrates both the disregard which Stephens has for this Court's Orders and the bad faith which motivates Stephens' conduct.

In addition to inundating the Court with frivolous filings, Stephens was also engaging in a campaign of harassment against the District outside of the judicial forum by directly communicating with the District in an effort to coerce a settlement, threatening District employees who were not cooperating with him, and disparaging the District and its employees through postings Stephens was making on the District's own Facebook page[4]. This included postings on the District Facebook page which openly solicited other parties to sue the District. Shockingly, this is similar to the misconduct recited by the Court in Hall. See Hall at pg. 2-3 ("Stephens immediately began cyberstalking Dettling, seeking to entice her clients to dump her as counsel, and posting negative reviews about her and her firm on the internet.").

Desperate for protection from Stephens' harassment, the District filed a Motion for a Protective Order against Stephens in this matter on September 28, 2016. See Document No. 41. The Court Ordered Stephens to file a response to the District's Motion for a Protective Order by October 13, 2016. See Document No. 45. Even after being directed to respond, Stephens ignored the Judge's Order and failed to file a response to the Motion for a Protective Order. By Order dated November 11, 2016, Judge Lloret granted the District's Motion for a Protective Order. (Document No. 58).

On October 20, 2016, Stephens filed a Motion for Default Judgment. (Document No. 49). Stephens' entire argument in this Motion was that the District failed to answer the original *pro se* complaint filed by Plaintiff within 21 days after being served with the summons and complaint under Fed. R. Civ. P. 4. Once again, the arguments advanced were ridiculously frivolous. Stephens even attached as an exhibit to his Motion the "Waiver of Service", signed by District Counsel which expressly provides that the District had 60 days to respond to the

---

[4] The details of Stephens truly reprehensible conduct is set forth in the Motion for Protective Order and its accompanying exhibits filed as Document No. 41.

Complaint, thereby defeating Stephens' own argument.  (Document No. 49 at Exh. 1).   The District was forced to respond to Stephens' ridiculous Motion on November 8, 2016.  (Document 50).

It is clear that this Motion for Default Judgment was filed for an improper purpose.  On November 15, 2016, after filing his Motion for Default Judgment, Stephens sent District Counsel an e-mail stating as follows:

> Your [sic] were served properly under Rule 403 on December 28 and didn't file an answer or otherwise defend in 21 days.
>
> If or when you lose by default, due to your negligence, you will lose more than the case.  You will likely lose the client and likely get sued for malpractice.
>
> Because clients don't like iw when they lose cases and money because the lawyer misses a deadline.
>
> You would do well to settle the case for $30,000, not lose, keep the client, and avoid malpractice.
>
> My hunch is that the loss of business and the increase in your malpractice insurance will be well over the $30k reqyrested.
>
> Better settle before you lose.
>
> Glenn
>
> PS—If you were prudent and decide to settle, then feel free to write up the agreement.  We will agree to waive all claims related to transactions prior to Anthony's move from GVMS for $30k untaxed.

See November 15, 2016 Email from Stephens to Mr. Kristofco and Mr. Dodds, attached hereto as Exhibit "7".

In Hall, Stephens also filed frivolous, repetitive Motions for Default.  See Hall at pg. 8 ("Stephens also failed to wait for the Court to rule on this motion before inexplicably filing a motion for default judgment against Dettling on October 8, 2016."); 9 ("Just four days later, he filed another motion for entry of default against Dettling."); 9 ("Stephens, however, immediately filed another response to "clarify" that he thought this motion for default was an appropriate supplement to the

first motion for the same, which, as a reminder, the Court had already denied as inappropriate weeks earlier.").

On November 17, 2016, Stephens again failed to attend a status conference with this court. Once again, the District incurred the expense of sending counsel to a conference which could only be marginally effective absent Stephens.

On November 17, 2016, after missing his second status conference before this Court, Stephens submitted a "Statement regarding today's conference" where he stated that a family emergency led him to lay the burden of checking the docket during the month of November on Plaintiff. (Document No. 52). He claimed that Plaintiff did not see any indication of the conference in the dockets. Stephens then had the audacity to state that "Like Mr. Stevenson, however, Plaintiff's Counsel saw no order or event related to any upcoming status conference[5]." (See Document No. 52 at p. 2). Stephens made this statement even though he knew of and had a copy of the Order scheduling the conference in his possession – it was attached as Exhibit 1 to Stephens' frivolous Motion for Sanctions. (See Document no. 39, Exh 1).

Stephens decided to divert attention away from the fact that he ignored another Court conference by increasing the volume and frivolity of his filings. On November 18, 2016, Stephens filed a "Response in Opposition to the District Motion to Dismiss for Failure to State a Claim." (Document No. 53). Stephen's response to the District's Motion to Dismiss was filed more than three months after the District filed its Motion to Dismiss the Second Amended Complaint on August 8, 2016. Stephens provided no explanation or justification for filing his Response several months after the deadline.

---

[5] Stephens then went on to suggest that the manner in which the Court notifies counsel of conferences could be improved.

On November 18, 2016, Stephens also filed a "Proposed Second Amended Complaint." Despite the fact that Stephens had already had the First Amended Complaint (Document no. 20) stricken from the record for failing to seek leave of court or consent from the opposing party before filing the amendment (Document No. 21), Stephens filed a "Proposed Second Amended Complaint" with no leave of Court or Consent from the District[6]. If there was any doubt that Stephens was acting in bad faith to overburden the Court and the District with frivolous filings one only has to consider that Stephens improperly filed the "Proposed Second Amended Complaint" without waiting for the Court to rule on the pending Motion to Dismiss the Second Amended Complaint (No. 28), Motion for Summary Judgment (No. 33) Motion for Leave to File the Third Amended Complaint (No. 36) or Motion for Default Judgment on the original Complaint (No. 49).

On November 21, 2016, this Court issued an Order to Show Cause why Stephens should not be held in contempt and/or otherwise be sanctioned for failing to appear at two status conferences with opposing counsel and the Court (August 8, 2016 and November 17, 2016), and scheduling a hearing for December 9, 2016.  (Document No. 56).

At this point, Stephens's filings became even more desperate and erratic.  On November 21, 2016, the very same day the Order to Show Cause was issued, Stephens filed a "Motion to Stay" the proceedings pending resolution of two (2) new charges of discrimination he claims to have filed with the EEOC.  (Document No. 57).  The following day, on November 22, 2016, Stephens filed a "Notice of Withdrawal of Appearance by Glenn H. Stephens."  (Document No. 59).  He followed his withdrawal with a "Reply to Order ECF No. 58", where he unilaterally declares that Judge Lloret's Order granting the District's Motion for a Protective Order is

---

[6] See Hall at pg. 9 ("Beyond all reason, he also attempted to file another amended complaint six days later, which this Court again struck.").

"moot", purportedly as a result of Stephens withdrawing as counsel. Similarly, in <u>Hall</u>, Stephens attempted to escape a ruling on a motion to disqualify him by withdrawing his appearance. <u>See</u> <u>Hall</u> at pg. 9 ("To cap things off, on October 30, perhaps fearing his disqualification was imminent, Stephens moved to withdraw his appearance in the case, claiming that Plaintiff could no longer "afford counsel.")

On November 25, 2016, this Court Ordered that despite his withdrawal, Stephens must still appear at the contempt hearing scheduled for December 9, 2016. Realizing that withdrawing as counsel would not save him from the contempt hearing, Stephens, despite having withdrawn his appearance as counsel in this case, decided to continue with his prolific, frivolous (and sometimes bizarre) filings. This action, withdrawing his appearance but continuing to file pleadings and papers with the Court, is clearly keeping with Stephens' *modus operandi*. <u>See</u> <u>Hall</u> at pg. 10 ("The Court struck this new motion, too, "as it was inexplicably filed by counsel who has withdrawn from the case.").

Stephens filed a Second Motion for Partial Summary Judgment on November 25 (No. 63), a Motion to Stay Grant of Withdrawal on November 26 (No. 64), and a Fourth Motion for Leave to Amend on December 6 (No. 67). On December 5, 2016, Ms. Meisler filed a Motion to Withdraw as Attorney in this case. In her Motion, Ms. Meisler noted that Stephens filed his Notice of Withdrawal in this matter without prior notice to, or contact with Ms. Meisler. (Document No. 66 at p. 2). Given that Ms. Meisler was Mr. Stephens sponsoring attorney, this shocking statement makes clear that Stephens should not be counsel in this matter.

On December 7, 2016, Stephens filed a "Statement On My Withdrawal." Stephens used this "Statement" to include a soliloquy of unsupported allegations and *ad hominem* attacks against the District and its employees. For example, with no support whatever, Stephens states

"the District backtracked on its settlement and began pulling the same of[sic] stunts." (Document No. 68, at p. 2)   He also makes outrageous unsupported allegations against District staff completely unrelated to this case: "through a teacher involved in school oversight committees Stevenson learned that Goffredo [District Assistant Superintendent] had been caught videotaping female teachers doing pilates." (Document No. 68, at p. 4).  Once again, this is all consistent with the way in which Stephens' practices law.  See Hall at pg. 12-13 (" He also used these motions to insert extraneous attacks against Dettling's character back into the public record – in open defiance of the Court's prior orders denying or striking his previous motions.")

## III.    ARGUMENT

### A.    Legal Standard

Section 1927 states, in pertinent part, that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." See 28 U.S.C. § 1927.  The principal purpose of § 1927 is "the deterrence of intentional and unnecessary delay in the proceedings." Zuk v. East. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 297 (3d Cir. 1996) (quoting Beatrice Foods v. New England Printing, 899 F.2d 1171, 1177 (Fed. Cir. 1990)). As such, the imposition of sanctions is reserved for "instances of serious and studied disregard for the orderly process of justice." Ford v. Temple Hosp., 790 F.2d 342, 346-47 (3d Cir. 1986) (quoting Overnite Trans. Co. v. Chicago Ind. Tire. Co., 697 F.2d 789, 795 (7th Cir. 1983)); see also Roman v. City of Reading, 2004 U.S. Dist. LEXIS 4570, at *24–26, 2004 WL 569522 (E.D. Pa. Mar. 22, 2004) ("Plaintiff offers no explanation whatsoever for failing to comply with the Court's September 22, 2003 Order.").

The imposition of sanctions under § 1927 requires finding that the offending attorney (1) acted in bad faith or through intentional misconduct; (2) to multiply the proceedings; (3) through conduct that can be characterized as unreasonable and vexatious; and (4) which resulted in an increase in the cost of the proceedings. Trauma Serv. Grp., P.C. v. Hunter, MacLean, Exley & Dunn, P.C., No. 99-5979, 2000 WL 764911, at *2 (E.D. Pa. June 12, 2000).

A finding of willful bad faith is a prerequisite to an award under § 1927. In re Orthopedic Bone Screw Prods., 193 F.3d 781, 795 (3d Cir. 1999) (stating that § 1927 applies only to conduct of "an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation"). Bad faith can be shown through "the intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). "When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied." Loftus v. Se. Pa. Transp. Auth., 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998), aff'd, 187 F.3d 626 (3d Cir. 1999), cert. denied, 528 U.S. 1047. This section provides that the court may hold an attorney personally liable for excess costs created by his unreasonable and vexatious conduct. 28 U.S.C. § 1927.

Additionally, the Court has inherent powers to issue alternative sanctions. "It is well established that district courts have discretionary authority to determine the appropriate sanction for a particular case and to impose severe sanctions in cases it seems appropriate." Coastal Mart, Inc. v. Johnson Auto Repair, Inc., 196 F.R.D. 30, 34 (E.D.Pa. 2000)(citing National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976). Courts issue alternative sanctions in cases where they are troubled by the behavior of the party. See American Telecom, Inc. v. First Nat'l Comm. Network, Inc., No. 99-3795, 2000 WL 714685, at *8 (E.D.Pa. June 2, 2000)). In

addition, when determining the appropriate sanction to impose, "district courts are advised to seek the most direct route that is preferable and to avoid compelling an innocent party to bear the brunt of its counsel's dereliction." Coastal Mart, 196 F.R.D. at 34 (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 869 (3d Cir. 1984)).   The local rules applicable in the Eastern District of Pennsylvania, the relevant section of Local Civil Rule 83.6.1(b) states, "No attorney . . . shall present to the Court vexatious motions or vexatious opposition to motions . . . or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof."

**B.    Stephens Should be Sanctioned for Maliciously, Unreasonably and Vexatiously Multiplying These Proceedings.**

Since his admission to practice *pro hac vice* before the Court in this matter, Stephens has engaged in a broad range of dilatory litigation tactics, from the filing of duplicative and baseless motions, to persisting in meritless arguments, misrepresenting the fact and law in his filings, engaging in contemptuous behaviors, and failing to abide by the Courts orders.

Notably, the pattern of misconduct exhibited by Stephens in this matter is so eerily similar to the behavior he was recently sanctioned for in Steven H. Hall v. Department of Homeland Security, No. 1:16-cv-01471 (JEB) (December 1, 2016) that there can be no doubt that it was done intentionally and maliciously.

For instance, as in Hall, Stephens repeatedly failed to follow the Court's directives, and instead responded by filing additional frivolous motions. See Hall at p. 8. Here, Stephens failed to wait for the Court to rule on a pending Motion to Dismiss before inexplicably filing a Motion for Summary Judgment. He failed to follow the October 11, 2016 Order to file a response to the District's Motion for a Protective Order.  Instead, Stephens filed a frivolous Motion for Default Judgment on October 20, 2016.  (Document 49).

Remarkably, just as he did here, in <u>Hall</u> Stephens also withdrew his appearance but continued to engage in frivolous motion practice. As the <u>Hall</u> Court noted, "perhaps fearing his disqualification was imminent, Stephens moved to withdraw his appearance in the case…" <u>Hall</u> at p. 9. Here, fearing the outcome of the contempt hearing against him scheduled for December 9, 2016, Stephens abruptly withdrew as counsel on November 22, 2016. (Document No. 59). Indeed, Stephens failed to even notify his co-counsel and sponsor in this matter that he intended to withdraw from the case. (<u>See</u> Document No. 66). In <u>Hall</u>, after his withdrawal, he proceeded to file a whole series of motions, including seeking to amend the complaint. Here, Stephens also withdrew as counsel on November 11, 2016 (Document 59), but continued undeterred with his barrage of filings even after his withdrawal. In addition to his numerous bizarre statements attempting to explain his misconduct (Documents No. 60 and 68), he filed an untimely "Reply to the District's Motion to Dismiss the Second Amended Complaint" (Document No. 62), a "Second Motion for Summary Judgment" (Document No. 63), a "Motion to Stay Grant of Withdrawal" (Document No. 64), and a "Fourth Motion for Leave to Amend" the Second Amended Complaint (Document No. 68), all filed after he withdrew as counsel in this matter.

Similar to the sanctionable conduct found in <u>Hall</u>, Stephens here has repeatedly advanced his meritless positions by including highly prejudicial and unsupported statements against the District which were clearly intended to harass the District and its employees. As in <u>Hall</u>, he used his frivolous motions to insert extraneous attacks against the character of District staff into the public record. <u>See</u> <u>Hall</u> pg. 12-13. For example, his explanation of his reason for having to withdraw from this matter in his "Statement of Withdrawal" (Document No. 68) includes pages upon pages of attacks against the District and District staff, including serious allegations of impropriety against District Assistant Superintendent Daniel Goffredo. (Document 68 at p. 4).

As the U.S. District Court for the District of Columbia concluded, "Stephen's filings do not merely seek the advancement of meritless positions, but they were also composed of largely irrelevant diatribes against [the Opposing Party] that 'utterly' lacked any 'colorable basis' in law." See Hall at pg. 12.  As in Hall, the total lack of factual or legal basis in Stephens' filings are more than enough to infer his malicious intent, bad faith and improper motives.

The Hall Court also did not have any difficulty "finding bad faith or improper motive" in Stephen's action. Here, there is also no lack of evidence of bad faith and improper motives.  His Motion for Default Judgment, for example, was followed by a bullying email to District counsel where he states "You would do well to settle the case for $30,000, not lose, keep the client, and avoid malpractice." See Exhibit 7.  He ends his email with the threat that District Counsel "better settle before you lose." Id.

Bad faith is also easily inferred from his repeated violations of Court Orders and directives.  On September 15, 2016, for example, Stephens violated the Court's orders to initiate a call at 3pm.  Instead of initiating the call in a timely manner and attempting in good faith to resolve discovery disputes, Stephens sent both District counsel and the Court a Motion for Sanctions against District Counsel at 3:10 pm, and did not initiate the call until after he did so.

Stephens has also repeatedly failed to attend and participate in conferences before this Court leading to those conferences being much less productive in moving this matter along, and further raising the costs and expense for the District to litigate this claim. Article II of Pennsylvania's Rules of Professional Conduct provides that "a lawyer should be considerate of the time constraints and pressures on the court in the court's effort to administer justice and make every effort to comply with schedules set by the court." In the months since this litigation began, Stephens failed to attend a pre-trial conference on August 8, 2016, failed to initiate telephone

conference on September 14, 2016, and failed to initiate timely telephone conference on September 15, 2016, (and instead filed a frivolous Motion for Sanctions) and failed to attend a conference on November 17.  Such actions show disrespect for the time and pressures of both this Court and District Counsel, and leads to the accumulation of additional unnecessary litigation costs for the District, a public entity.

Lastly, as in Hall, Stephens here has a history of cyberstalking the District and its school staff by posting negative comments in the District-sponsored Facebook page, leading the District to seek a Motion for a Protective Order to prohibit Stephens from this behavior.  The Protective Order in this matter was granted on November 21, 2016.   See Hall, at p. 2-3; (Document No. 58).

Stephens' pattern of behavior is to utilize motion practice as a meaningless diversion that imposes roadblocks to the expedient resolution of the substantive issues of a case and to use the litigation process to harass the District and District employees.  Time and again the District has had to respond to frivolous motions which were filed totally lacking support in fact or in law. From his "Motion of Venue", with its outlandish claims about Reading being "a particularly racist city", to his motion for sanctions where he attacks the District for engaging in *ex parte* communications by sending a letter to the Court where he was copied on the email sending the letter, to his recent Motion for Default Judgment where he includes as an Exhibit the Waiver of Service which proves that his arguments are meritless.

IV.    **CONCLUSION**

Stephens has a long history of misbehavior that has gone unchecked for far too long. His misconduct has had prejudicial effects on Defendant and the Court, and even on Plaintiff. Based on the foregoing, the District requests that Stephens be sanctioned, including, issuance of an Order prohibiting him from filing any additional pleadings or papers in this matter, revocation of his *pro hac vice* status and being ordered to reimburse the District for the attorneys' fees incurred as a result of Stephens' sanctionable conduct.

**WISLER PEARLSTINE, LLP**

By:   /s/ Michael D. Kristofco
**MICHAEL D. KRISTOFCO, ESQUIRE**
Pa. Bar No. 73148
SILVIA DIAZ, ESQUIRE
Pa. Bar. No. 312435
460 Norristown Road, Suite 110
Blue Bell, PA 19422
(610) 825-8400
*Attorneys for Defendant,*
*Great Valley School District*

Dated:  December 8, 2016