IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**ANTHONY LYN STEVENSON,**            **CIVIL ACTION NO.: 15-5933**
    *Plaintiff*

    v.

**GREAT VALLEY SCHOOL DISTRICT**          **December 8, 2016**
    *Defendant*

**Plaintiff's Counsel's Reply to Show Cause Order**

On November 18, 2016, a show cause order issued regarding Glenn Stephens "fail[ure] to appear at two status conferences with opposing counsel and the Court (August 8, 2016 and November 17, 2016). ECF. No. 56. A hearing is scheduled on the matter tomorrow. ECF No. 62.

**I.  Introduction**

Mea culpa. I admit that the conferences were missed. On both occasions, as detailed below, I believed I was making diligent efforts to establish if a conference was scheduled. But, in hindsight, in addition to the steps I took then, I should have called the Judges' chambers or the clerk. In neither instance was my failure to attend indicative of contempt or disrespect or disregard for is Court.

Quite the contrary. Having grown up in Lock Haven, Pennsylvania in a working-poor, often mother-headed family, the second person in my family to attend college, I view this opportunity to appear before the highest federal court in Pennsylvania as an honor and a privilege. I sincerely apologize if anything I have done, by omission or commission, would make it appear otherwise.

**II. Personal Background**

Although I currently live in the DC area, and went to graduate- and law school in California, I am a Pennsylvania native. My sister Leslie (the Plaintiff's wife) and I grew up attended Bald Eagle Nittany High School. After high school, I attended Millersville University, where I ran cross country and track and was President of the Student Senate. After earning my Ph.D. from ULCA in 1992,

1

and teaching at Pomona College from 1992-1993, I lived in the Springfield area in the later portion of 1993. From 1993 to 1997, when I went to law school at Cal, I lived in the Royersford area in the summer of 1995 and 1997. In breaks between periods of college teaching, I worked as social worker at St. Francis residential treatment facility in Norristown. In 2008, I left the NLRB and moved to State College. I taught ADR, employment law, and labor law at Penn State University until 2013. During 2011, 2012, and 2013, when my sister and mother had cancer, I generally split my time between DC, Douglassville, PA (my sister's home) and Loyalsock, PA (my mothers' home).

In addition to often living in Pennsylvania, I have professional ties to the state. I have coached a number of distance runners from Pennsylvania, including Jo Rupp, one of the leading Masters female marathoners in the state. As a FINRA arbitrator, Philadelphia is one of my hearing locations. In addition, I am a Pennsylvania Labor Relations Board, Arbitrator and Fact-Finder and a Mediator with the Bureau of Mediation, Pennsylvania Department of Labor and Industry.

I underscore my Pennsylvania ties, in part, to assuage any possibility that any mistakes I have made reflect Beltway disdain for the world outside the DC area. Quite the opposite, I have found my roots in Pennsylvania to be both grounding and empowering in the rough and tumble of DC. And particularly because of my humble background, I am honored to appear before this court.

### III. The August 8, 2016 Conference

My goal in explaining the circumstances surrounding the missed conferences is not to make excuses, shirk responsibility, or avoid blame. I simply want to explain what happened.

On Thursday August 4, 2016, the Defendant's Counsel Ms. Diaz emailed the Judge Lloret's assistant Ms. McMurry (with myself and others counsels cc-ed) and asked if there was a conference the next day. Exhibit 1. The next day, Friday August 5, 2016, at 8;49 AM, I emailed Ms. McCurry and the other counsels and asked "Is there a call this morning or next week?"  Exhibit 2. I immediately received a reply stating that Ms. Mcurry was out of the office until Monday August 8.

Exhibit 3. Concerned that a conference might be held that morning, albeit without Ms. McCurry coordinating the conference, at 9:10 AM, I emailed the other attorneys "I am assuming no call this morning. If that changes, I can be reached at 202-258-6521. Exhibit 4. That Friday morning, I monitored by phone and emails for notification of a conference that morning. None came.

On Sunday, August 7, 2016, at 6:35 PM, I emailed Mr. Kristofco about extension of discovery. See Exhibit 5. Although it is not opposing counsel's responsibility or duty to inform me of scheduled conferences, I thought, given Ms. Diaz's email about a conference the previous Thursday, that he might mention if there was a conference on Monday. He did not.

As a result, I deduced, based on the email string of August 4, August 5, August 7, 2016, I deduced that there was no conference on Tuesday August 8 and I missed the conference. I didn't learn until the next day, that a conference had been held on the 8th. See Exhibit 6. At that time, I emailed Ms. Crossley and apologized, asking if it was possible that e-mail notifications of conference were going to Ms. Meisler but not me. Id. And if so, how that might be fixed. Id.

Dismayed that I missed a conference and concerned I was not receiving notifications of events like the August 8 conference from the Court, I forwarded my email exchange with Ms. Crossley to Sharon. I explained the possible problem to Sharon and asked her to forward "anything you get from the court to me." See Exhibit 7. She replied "I have created an automatic forward from my Comcast account to you." Id. I believed at the time, the forward would fix the problem.

Based on the string of emails on August 4, 5, and 7, I assumed there was no conference on the 8th. In retrospect, rather than assuming or deducing whether a conference was scheduled based on emails, I should have made calls to determine, definitively, whether a conference was schedule.

I accept blame for not calling Ms. Crossley or the Clerk's office. But I believe the emails show that a) I was not the only counsel on the case confused about the day of the conference, Ms. Diaz was also (at least on the 4th), and b) I was trying to establish if there was a conference.

3

And because I was making good faith, diligent, albeit failed, efforts to determine whether there was a conference on August 8, 2016, I ask that the Court not hold me in contempt or sanction me for that mistake. I realize that the "pure heart, empty head" defense cannot undo the mistake, I can only ask that my good faith but ill-fated efforts should mitigate the punishment.

**IV. The November 17, 2016 Conference**

**a. The Nature of My Law Practice and My Hectic November**

In the summer of 2015, I hung out my shingle as a solo practitioner of a virtual law practice (VLP), aimed to fill a particular niche – representing EEOC clients who other lawyers refuse to represent. With the expansion of the use of contingent federal employees and contractors in the federal government, alleged wrongful discharges of federal contractors and federal probationary employees have skyrocketed. Because these contractors or probationary employees lack standing in some forums, and often have limited means, they have a hard time finding representation.

And it is not uncommon that when these employees find representation that the representation is poor. About half of my clients previously had poor quality representation that included significant ethical violations and actionable mistakes. Once such unethical attorney – Rosemary Dettling – is the subject of my ongoing representation and litigation on behalf of Steven Hall in *Steven Hall v. DHS*. It appears, the DC Bar is poised to sanction Dettling.[1]

When potential clients come to me, they generally have little or no money, and are often out of work. Or, if they had money, they expended that money on poor representation like that which Dettling and Dekker gave to my clients Steven Hall or the Schooleys. As a result, I represent most of my clients on either a pro bono basis or for low flat fees, often less than most employment lawyers make per hour. It is not uncommon that I make less on a case than my Laffey rate for one hour.

---

[1] I have little doubt that the sanctions Judge Boasberg levied will be reversed. Ms. Dettling is the object of a slew of ethics complaints and my pleading well document her ethics violations in her handling of the cases of my clients. Dettling is not the only counsel in my other cases exposed to ethics actions. Three other lawyers have been the subjects of bar sanctions in the past.

4

This is a labor of love for me. Raised Methodist, I adhere to the Free Methodist principle of duty to the poor and simple living, I happily represent, for little gain, those other lawyers turn down.

But because a disproportionate number of my clients are pro bono or low flat fee, I must carry a relatively large number of clients at any given time, to make ends meet. And after a client of mine gained one of largest individual settlements in ADA history ($999,999.00) in late summer 2016, my already substantial client rolls swelled during the Fall. And between my already heavy case load and some other exigencies, I knew early November 2016, would be extremely hectic.

### b. My Conference Coverage Request

Cognizant of the fact that notice of the August 8th conference didn't get to me, knowing November would be hectic, I wanted to avoid any repeat. On November 1, 2016, I asked the other members of our "team" – Sharon and Anthony - to monitor whether there were conference and to notify me. Based on my earlier exchange with Sharon about forwarding notifications of conference, I thought email notification was covered. But just to be safe, I asked Anthony to monitor Pacer.gov for conferences. Between Sharon receiving and forwarding email notification and Anthony checking Pacer.gov, I thought we put steps in place to avoid a repeat of August 8 in November.

### c. My Hectic Early November

Days later, November heated up. In early November I gained several federal employee clients. Two of those clients retained me just days before the deadline for responses to Agency motions of summary judgment. To respond, I literally had to familiarize myself with the entire case file in a matter of a day or two. I scrambled, doing without sleep, to make the deadlines.

On November 3, my uncle, who is like a father to me, had a heart attack. I let Ms. Diaz know. See Exhibit 8. On November 6, with the discovery deadline looming, I wrote opposing counsels, telling them I was working on document discovery, but that family events might slow the flow of any outstanding documents. See Exhibit 9. On November 8, I had a prehearing conference

5

in a FINRA arbitration. See Exhibit 10. On November 8, my uncle had open heart surgery. On November 10, I had a pre-hearing conference with an EEOC Administrative Judge (AJ). See Exhibit 11. That same day, my uncle had a second heart surgery. See Exhibit 12. Because of my uncle's dire health situation, I was forced to cancel and reschedule my participation in the Miami Man Half-Ironman triathlon, the National Championship in my specialty event Aquabike on November 13. See Exhibit 13. On November 15, I had pre-hearing with a different EEOC AJ. See Exhibit 14.

During this hectic time, I received no notification from either Meisler or Stevenson regarding conference. I took their silence on the issue to be an indication that between Meisler forwarding emails (as we discussed in August) and Stevenson monitoring Pacer.gov, that we had successfully put in place a system to determine when conferences were scheduled. I was wrong.

Much to my considerable chagrin, our system missed the November 17, 2016 conference. See Exhibit 15. As it turns out, from November 1 until November 17, no status related documents were posted. The only document posted in that period was ECF No. 50 on November 3 (Defendant's response to default judgment). Not knowing the status notification was found in ECF No. 31 in August, Stevenson believed that no conference was scheduled and provided no notification. Nor, in that period, did Meisler forward me any conference scheduling emails. Based on the absence of any notification from Stevenson or Meisler, I thought no conference was scheduled. And missed it.

In retrospect, I should have called the Clerk or the Judge's Chambers. And I am culpable for not doing so. But, as in August, I was attempted to establish whether a conference was in the offing. I believed we put into place a system that would avoid a repeat of August. I thought Meisler would get an email and forward it to me or Stevenson would see it on Pacer. Neither happened.

The fact that I participated in several other conferences (one as a FINRA arbitrator and two as a representative before EEOC judges during this period), is significant in this regard. The fact I made three other conferences during this very hectic period, proves that given notice, I made

conferences during this period. And I would have made the November 17 conference if I had known.

Knowing what I know now, I should have called. My bad. But it is my hope that this account of events will counter any notion that I missed this conference out of contempt for or disrespect of the court or in bad faith. I hope this explanation of events will obviate the need for sanctions.

**V. The Show Cause Order and Beyond**

Because events show I lack the mens rea for criminal contempt,[2] the only arguable contempt here is civil. And as is appropriate in civil contempt situations, since November 17, I have worked to undue or avoid any obstructions or delays or interferences my missing the meeting occasioned.

Since I learned of the show cause order, I have attempted, yet again, to put in place a system to catch conferences. At the start of each of the las two weeks, I have emailed Chambers at the start of each week and asked if there are any conferences. See Exhibit 16. In an effort to find out what I missed, I request transcripts of the two conferences. See Exhibit 17. None were taken.

But because the November 17 conference was scheduled a fortnight after discovery ended, outstanding documents may have been discussed. Consequently, in the two-week period after the November 17 conference, I have tried to undue any document discovery obstructions or caused by my non-appearance. I sent Mr. Kristofco the Stipulation regarding damaged (I sent him one earlier, but we disagreed on working.) See Exhibit 18. I coordinated with the Plaintiff and Kristofo to make sure outstanding documents were provided or non-provision explained. See Exhibit 19.

I am also willing to make restitution in other ways. Yesterday, I voluntarily sent the Clerk a money order for $500 to show my contrition and to recompense the Judges and their Chambers for

---

[2] There are four essential elements under 18 U.S.C. § 401(1) - (1) misbehavior of a person; (2) in or near to the presence of the court; (3) which obstructs the administration of justice; and (4) which is committed with the required degree of criminal intent. *United States v. McGainey*, 37 F.3d 682, 683 (D.C. Cir. 1994). There are three essential elements under 18 U.S.C. § 401(3) - (1) there must be a violation; (2) of a clear and reasonably specific order; and (3) the violation was willful. *United States v. Nynex Corp.*, 8 F.3d 52, 54 (D.C. Cir. 1993). See also *Matter of Goldman*, 546 So. 2d 779 (Fla. Dist. Ct. App. 4th Dist. 1989)(Trial court abused its discretion in finding attorney who failed to appear at case management conference in contempt for willfully disobeying court's orders, where attorney's conduct did not evince willful disregard).

any added expense. I arrived at that sum based on the case I found that seemed most similar. *Dokmecian v. ABN AMRO N. Am., Inc.*, 304 A.D.2d 445, 445, 758 N.Y.S.2d 638, 639 (App. Div. 2003)(finding the employee's counsel $500 for failure to appear both at the originally scheduled preliminary conference and at the rescheduled conference based on errors). But if the Court deems additional payments necessary, I will voluntarily pay those amounts out of contrition for my mistakes. In addition, I am willing to donate my time to the Court, as mediator, mediation instructor (see attached resume), as pro bono counsel, or any other capacity that the Judge and Court desire.

## VI. Conclusion

In conclusion, even if sanctions are deemed appropriate, I respectfully submit that my good faith efforts to establish whether a conference was scheduled on August 8, and my good faith belief that we had put in place a system to find when conferences were scheduled in November, should render contempt inapplicable. I lack the mens rea of criminal contempt and have tried to the best of my ability to undo any obstructions that might have been occasioned by an arguable civil contempt.

I accept fault. I should have called the Chambers or the Clerk. But, as the evidence shows, in neither August nor November did I knowingly ignore actual notice of a conference. I am not making excuses or shirking responsibility, simply tried to explain my non-appearance. And as court have held, the persuasiveness or validity of the explanation can impact if contempt is appropriate.

> When an attorney is aware of an order requiring his or her appearance in court, and the attorney has the ability to appear but knowingly and intentionally does not appear, the attorney has "willfully" neglected or failed to appear, and once such willful failure to appear is shown, the propriety of a contempt judgment depends upon the validity or persuasiveness of the attorney's excuse or justification for his or her nonappearance. *In re Aguilar*, 18 Cal. Rptr. 3d 874, 97 P.3d 815 (Cal. 2004).

I hope the Judge will decide that my explanation, my contrition, my efforts to undue obstructions, my voluntary payment of restitution, and my willingness to donate time as a mediator, mediation instructor, or pro bono counsel, will render additional sanctions unnecessary.

8

As a Pennsylvanian, I am honored to appear before this court. Admittedly, I made mistakes, I should have taken other steps to determine if conferences were held. But contempt or disrespect is inapplicable here. My efforts, though failed, were multiple and earnest.

                                                      **/S/**
                             *Glenn Stephens*  12/09/2016
                             Glenn Stephens Ph.D., Esq.
                             D.C. Bar # 47280
                             201 East Fairfax 302
                             Falls Church VA
                             22056 202-258-6521
                             Drghs3@gmail.com

## CERTIFICATE OF SERVICE

I certify that on December 9, 2016, a true, correct copy of the above was e-filed and served on:

Silvia Diaz, Esq. Wisler Pearlstine, LLP
PA Bar No. 312435
460 Norristown Road, Suite 110 Blue Bell, PA 19422
(610) 825- 8400
sdiaz@wispearl.com
mkristofco@wispearl.com
Attorney for Defendant, Great Valley School District

Judge Jeffrey L. Schmehl
c/o Michael Kunz, Clerk of Court
U.S. District Court, ED of PA 2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1797
(215) 597-7704
PAED_clerksoffice@paed.uscourts.gov


                                                **/S/**
                                       *Glenn Stephens* 12/08/2016
                                       Glenn Stephens Ph.D., Esq.
                                       D.C. Bar # 47280
                                       201 East Fairfax 302
                                       Falls Church VA
                                       22056 202-258-6521
                                       Drghs3@gmail.com