IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY LYN STEVENSON,** *Plaintiff* | **CIVIL ACTION NO.: 15-5933** |
| vs. | |
| **GREAT VALLEY SCHOOL DISTRICT** *Defendant* | December 19, 2016 |

# ORDER

**AND NOW**, this _____ day of _____, upon consideration of the Plaintiff's Motion, IT IS HEREBY ORDERED, that the Defendant's Protective Order is rescinded.

_____

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY LYN STEVENSON,** *Plaintiff* | CIVIL ACTION NO.: 15-5933 |
| vs. | |
| **GREAT VALLEY SCHOOL DISTRICT** *Defendant* | December 19, 2016 |

### PLAINTIFF'S MOTION TO RESCIND OF DEFENDANT'S PROTECTIVE ORDER

For the reasons explained in the attached memorandum of law, the Plaintiff respectfully moves that the Court rescind the Defendant's Protection Order (ECF No. 58).

Respectfully Submitted,

　/S/　*Glenn Stephens*　12/17/2016
Glenn Stephens Ph.D., Esq.
DC Bar No. # 472780
Federal Employees Defense, LLC
1725 I Street NW, Suite 300
Washington, DC 20006
202-258-6521
Drghs3@gmail.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY LYN STEVENSON,** *Plaintiff* | **CIVIL ACTION NO.: 15-5933** |
| vs. | |
| **GREAT VALLEY SCHOOL DISTRICT** *Defendant* | December 19, 2016 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO RESCIND PROTECTIVE ORDER**

**I. Background**

On September 15, 2016, Plaintiff's Counsel Dr. Stephens filed a motion for sanctions against Mr. Kristofco regarding his false statements to Judge Schmehl on August 9, 2016 and ex parte communications with the Court on September 12, 2016. See ECF No. 38. The motion alleged Kristofco's ex parte communication violated Pennsylvania Rules of Professional Conduct 2.9(a) and 3.5 and that Kristofco's knowingly false statements that the Plaintiff's documents were "untimely" violated Rule 3.5(a)(3). Id. On September 23, 2016, Dr. Stephens filed an ethics complaint with the Pennsylvania Bar regarding Kristofco's ethics violations. See Exhibit 1.

Five (5) days after Dr. Stephens filed an ethics complaint against Mr. Kristofco for his lack of candor with this tribunal, Mr. Kristofco retaliated by falsely alleging purportedly unethical conduct by Dr. Stephens. ECF No. 41. Notably missing from Kristofco's Motion was any mention of the fact that Stephens filed ethics charges against him just five days earlier. Id.

Kristofco seeks a protective order regarding six allegedly problematic communications:

- E-mail to Robin Koslo Stahl, May 21, 2014 (ECF No. 41-1, p. 2)
- E-mail to Steven Meiswich, August 21, 2016 (ECF No. 41-1, p.5)
- E-mail to Steven Meiswhich, September 7, 2016 (ECF No. 41-1, p. 6)
- E-mail to School Board et al., September 1, 2016 (ECF No. 41-1. p. 2)
- Facebook Post, September 7, 2016 (ECF No. 41-1, p. 6).
- Facebook Post, September 8, 2016 (ECF No. 44-1, p. 7).

3

**II. Only One of Six Communications in Kristofco's Motion is Remotely Related to This Case**

Unlike Congressional Commerce power,[1] the powers of Article III courts are not plenary. The Constitution permits federal courts to hear "[c]ases . . . arising under" the Constitution and federal law. U.S. Const. art. III, § 2. Tracking Article III, Congress hasconferred on district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For statutory purposes a case only "arises under" federal law if a federal issue appears amid the plaintiff's cause of action. See *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, (1908). The so-called "well-pleaded complaint rule" marks the outermost boundary of federal question jurisdiction under § 1331. See *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). Applying the well-pleaded complaint rule is the first step in assessing jurisdiction. See 13D Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3566 (3d ed.)("Analytically, courts should apply the well-pleaded complaint rule first."). The well-pleaded complaint rule is a "quick rule of thumb" for determining jurisdiction. *Dillon v. Medtronic*, Inc., 992 F. Supp. 2d 751, 754-55 (E.D. Ky. 2014).

Applying the well-pleaded complaint rule to this case, this court's jurisdiction is limited to federal issues appearing in the plaintiff complaint or amended complaints. The complaint(s) allege violations of Title VII by the Defendant between September 2009 and July 2014. Of the six communications discussed in the Defendant's Motion only the May 21, 2014 communication with Robin Koslo Stahl even remotely related to matters before this court.

**a. The May 21, 2014 E-mail to Policy 448 Investigator Robin Koslo Stahl**

At the time of the e-mail to Robin Koslo Stahl, Dr. Stephens[2] was employed as an equal opportunity specialist (EOS) in the Employment Investigations Division (EID) in the Office of

---

[1] *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 22, 57 S. Ct. 615, 617 (1937)("The power of Congress over interstate commerce is plenary")

[2] Dr. Stephens is a certified EEOC investigator and certified EEOC Counselor.

Adjudication in the Office of the Assistant Secretary of Civil Rights (OASCR) at the Department of Agriculture. Stephens oversaw the investigation of the formal-phase EEOC complaints of USDA employees by contract investigators and investigative vendors, insuring that investigations of formal EEOC complaints were thorough, fair, impartial, and timely under the EEOC's MD-110.

As an EOS, Stephens routinely interacted with complainants and their representatives. See for example Exhibit 2, confidential information redacted. In the federal formal complaint process, complainants may represent themselves or may be represented by lawyers, union business agents, non-attorney EEO specialists, friends, coworkers or even family members. For example, in one of the complaints Stephens processed, the complainant's brother served as his representative.

It is not uncommon that when complainants move from the informal intake phase of the federal EEOC process to the formal phase, that they have questions about representation. Those representational questions from complainants were typically directed to Stephens or redirected to Stephens by the contract investigators (most contract investigators are not lawyers and not entirely familiar with applicable rules and regulations and guidance). One common representational asked of Stephens was whether a particular individual could serve as a representative in the process.

In 2012, when Mr. Stevenson filed a Policy 448 complaint against Willis Allende, he was represented by coworker representatives from his union local, the GVEA. The Union's representation was subpar because the union representatives were unfamiliar with Policy 448 and clueless about substantive EEOC and PHRA law and related regulations and guidance.

On or about March 27, 2014, Stevenson filed Policy 448 complaints against Souders, Sargent, Allende Willis, and Goffedo. See Exhibit 3. Because Stevenson's principal, Souders, was named in the complaint, the investigation was handled by Human Resources Koslo Stahl. See Exhibit 4, Step 2 (Providing "The Compliance Officer shall authorizethe building principal to investigate the complaint, unless the building principal is the subject of the complaint or is unable to conduct the investigation.)

On April 11, 2014, PSEA's Martin Higgins seemed to tell Stevenson that the GVEA would not represent Stevenson in the 448 process. See Exhibit 5. Three days later, on April 14, 2014, after Stevenson inquired again, Higgins confirmed no PSEA representation. See Exhibit 6. The union's exit raised the question of whether Stephens could represent Stevenson in the 448 process.

Neither Policy 448 nor AG 448 expressly allows or prohibits non-union representation in the 448 process. The only mention of the term "representative" in AG 448 is the following: "Staff may lodge complaints with their building principals or the District Harassment Liaisons, or may lodge complaints through their union representatives." See Exhibit 7. Based on the governing policies. it was unclear if Stephens could act as Stevenson's representative in the 448 process.

At this same time, Stevenson was pondering filing a complaint against Souders with the Pennsylvania Human Rights Commission (PHRC). As a result, on April 15, 2014, Stephens wrote the PHRC and asked if he could serve as an attorney or non-attorney representative of Stevenson in PHRC proceedings. He was told by the PHRC that he could represent Stevenson. See Exhibit 8.

Similarly, in late Spring and early summer of 2014, Stevenson was considering an ethics complaint against Elizabeth Sargent, his harasser and the District's informant, and several others. On May 20, 2014, PSEA informed Stevenson that Sargent and the others refused to mediate matters using the union's PSEA process. See Exhibit 9. On June 9, 2014, Stephens inquired with PSEA if he could represent Stevenson in the PSEA ethics proceeding. See Exhibit 10. On August 18, 2015, a PSEA Ethics Hearing was held and Stephens attended as Stevenson's representative.

Just as EEOC complainants and their representatives, attorney or not, often contacted Stephens at USDA to inquire about participation in the formal process, the Spring and Summer of 2014, Stephens inquired with the PHRC and the PSEA about participation in their processes. And after PSEA refused to represent Stevenson in the 448 process, Stephens asked the District's 448 investigator Robin Koslo Stahl about participation on May 20, 2014.

Stephens e-mailed Koslo Stahl with Wisler Pearl's Kristofco and Dodd cc-ed (Exhibit 11):

Ms. Koslo Stahl et al.:

**May a complainant-employee, like my brother-in-law Anthony Stevenson, have a representative in the Great Valley School District Policy #448 process?**

The only mention of "representative(s)" in AG-448 is found in Part (I)(C), which states "Staff may lodge complaints with their building principals or the District Harassment Liaisons,, or may lodge complaints through their union representatives." This seems to suggest that, at least for purposes of filing a complaint, that representation is allowed and that the representative need not be a member of the PA Bar.

But whether broader representation in the Policy #448 process is allowed isn't clear.

Respectfully, I submit such representation should be allowed. First, AG-448 does not expressly disallow such representation. Second, AG-448 expressly provides for a role for non-attorney reps in the filing of complaints. Third, such representation only seems fair. The District and its officers are ably represented by counsel, complainant-employees should at least have the option of choosing representation, even if a non-attorney.

Finally, allowing non-attorney representation in the District internal #448 process would be consistent with representational rules in Pennsylvania Human Rights Commission (PHRC) and EEOC proceedings. Policy 448 cites and incorporates Title VII and the PHRA along with related regulations and guidance. In both the PHRC and EEOC processes, complainants are allowed representation (by attorneys or non-attorneys). For example, I work in the area of federal employee discrimination-claims investigation, and federal employees are allowed representation even during the informal process (prior to filing a formal complaint).

I submit that since Policy 448 incorporates Title VII and the PHRA and related regulations and guidance, that complainants in the Policy 448 process should have the same representational rights and options that complainants have in the PHRC and EEO processes on which Policy 448 is modeled.

For these reasons, I respectfully request that the District allow me to serve as the non-attorney representative of Anthony Stevenson in the District's Policy 448 process.

**Could you, the District or its counsel, please let me know if I may represent Anthony (in a non-attorney capacity) in the internal #448 process?**

Thanks

Glenn Stephens

There is nothing inappropriate, let alone anything unethical or protective-order-worthy about this inquiry by Stephens. First, this inquiry was prompted by the conjuncture of the union's refusal to represent Stevenson in the 448 process and the lack of any clear guidance on alternative representation in Policy 448 or AG 448. Second, Stephens merely asked the District's Policy 448 investigator Koslo Stahl, as complainants and their representatives asked Stephens as an EOS at

USDA, about participation in the 448 process. Third, Stephens did not communicate with Koslo Stahl out of the "earshot" of the District counsels – Stephens cc-ed Kristofco and Dodd on the email. Fourth, Stephens asked if Koslo Stahl or "the District'counsel" could let him know if he could represent Anthony. Fifth, the next day, it was Kristofco, not Koslo Stahl who got back to Stephens. See Exhibit 12. Thus, it can hardly be said that Stephens bypassed District Counsel and tricked an unwary Koslo Stahl into granting Stephens a participatory role. Sixth, at the time of the communication. Koslo Stahl was not included as a party or witness in any of Stevenson's matters.

Although Kristofco and Dodds would protest the communication on feigned ethical grounds, their baseless ethical protestations were just a fig leaf. For nearly five years, Stevenson had endured the District's discrimination, harassment, and retaliation virtually unaided by any real representation. Indeed, the representation provided by PSEA/GVEA was generally so useless that Stevenson's main harasser Principal Souders commented to Stevenson "the union is most of your problem." Kristofco and Dodd and the District's harassers feared that Stephens participation might level the legal playing field. And this very same reason, Kristofco now moves for sanctions that would remove Stephens from participating in this case while Stevenson searches for a replacement pro hac vice sponsor for Stephens or an attorney to replace Stephens altogether.

Nothing better proves that Dodd and Kristofco's exclusion of Stephens from representing Stevenson from the 448 process was a cynical attempt to gain an unfair advantage – the District represented by two or more counsels, Stevenson represented by none – than a letter they sent Stephens the day of his inquiry. See Exhibit 13. In that letter, they falsely claimed, contrary to well-settled EEOC and PHRC practice, that Stephens could not participate in EEOC or PHRC proceedings because he was not a member of the PA bar. Their claim was and is patently false.

Just as Krisfoco and Dodd's claims that Stephens could not participate in Federal or State

EEOC-type procedures as a representative was false, so too were their claims regarding the scope of the non-communication rule. On May 27, 2015, Dodds once again pressed his baseless claims that professional ethics rules prevent all communications with District employees. See Exhibit 14.

Although Stephens doubted the simplistic ethics analysis of Dodds and Kristofco, Stephens has a well-established practice when faced with ethical questions – "When in doubt ask."  So on May 31, 2014, Stephens inquired with the Philadelphia Bar Association, a respected source of professional ethical guidance in Pennsylvania. See Exhibit 15. That inquiry included a short memo that Stephens drafted on the Koslo Stahl communication and the no-contact rule. See Exhibit 16. Stephens also inquired a few days later with the DC Bar. See Exhibit 17.

Dodds' and Kristofco's claims that professional ethics rules create a blanket prohibition against all management level employees of their entity is dead wrong. First, ABA Formal Opinion 95-396 (July 28, 1995) held that counsel for an organizational defendant cannot assert a blanket representation of all organizational employees thereby prohibiting communication with them.

Second, Koslo Stahl was not a party at the time of the representation. Both the DC non-contact rule and the PA non-contact rule differentiate between prohibited communications non-party employees and party employees. See DC Rule 4.2(b)("During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee without obtaining the consent of the organization's lawyer. If the organization is an adverse party, however, prior to communicating with any such non-arty employees, a lawyer must disclose to such employees both the lawyer's identity and the fact that the lawyer represents a party that is adverse to the employee's employer.') See Exhibit 18. Stephens communication with Koslo Stalh, a non-party, both disclosed his identity and the fact that he was asking about representation of a party (Stevenson) adverse to Koslo Stahl's employer.

Third, Dodd and Kristofco's misinterpretation of the non-contact rule or rules is contradicted

9

by their plain language. Pennsylvania's Rule 4.2 provides, "Rule 4.2. Communication with Person Represented by Counsel. In representing a client, a lawyer shall not communicate *about the subject of the representation* with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." See Exhibit 19. Stephens was not communicating with Koslo Stahl about the *subject* of the 448 complaint. He asked if his participation was allowed.

Fifth, in asking the procedural question, Stephens was asking Koslo Stahl about a "matter[] outside the District's representation." See Exhibit 19, PA Rule 4.2 Comment 4 ("matters outside the representation"), Exhibit 18, DC Rule 4.2 Comment 2 ("matters outside the representation.")

Sixth, contrary to Dodds, Stephens was not trying to gain admissions from Koslo Stahl. Stephens was simply asking her if he could participate as Stephens' representative. Thus, Stephens communication was in no way inconsistent with the purpose of the DC and PA no contact rules.

Whether Dodds and Kristofco agree with Stephens isn't determinative. Determinative in this regard is the fact that the Third Circuit has rejected the sweeping "position of Dodds and Kristofco. In *Williams v. Lockheed Martin Co.* (*In re Asbestos Prods. Liab. Litig.*), 2013 U.S. Dist. LEXIS 129477, at *16-19 (E.D. Pa. Sep. 9, 2013), the Circuit has held:

> The underlying policy and Official Comment to the Rule [4.2] make clear that it was intended to forbid ex parte communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organization . . . The scope of the no-contact rule does not "shroud every custodian, cafeteria worker and receptionist simply in light of their mantle as 'corporate employee'"
>
> . . . .
>
>  . . . The Third Circuit has stated that Rule 4.2 is intended to forbid ex parte communications with all institutional employees whose "acts or omissions could obligate or impute liability to Defendants with respect *to the matter.*"
>
> (internal citations omitted)(emphasis added).

As the investigator of Stevenson's 448 complaint, Koslo Stahl was not positioned to make

admissions obligating or binding the Defendants regarding that "*matter*." Nor, contrary to Dodds, was Stephens' email aimed at tricking the unwary Koslo Stahl into admitting anything. Stephens was simply asking a question he was routinely asked as an EOS at USDA, a question he asked of the PHRC, a question he asked of PSEA. "May I participate a Stevenson's representative?"

Finally, notwithstanding the fact that Stephens disagreed with Dodds and Kristofco about the scope of Rule 4.2, that May 20, 2014 email to Koslo Stahl was, by Kristofco's admission, the final communication from Stephens to Koslo Stahl. Thereafter, Stevenson communicated with Koslo Stahl and, as needed, forwarded emails or relayed conversations to Stephens.

Because this is the only communication in the period in which the alleged violations in the complaint occurred, the May 20, 2014, email to Koslo Stahl is the only possible foundation for a protective order. Because it cannot argued or maintained that the Defendant should be granted a protective order based on a single communication to a non-party about matter outside the matter two and a half years ago, the protective order should be rescinded.

                          Respectfully Submitted,

                        /S/ *Glenn Stephens*   12/19/2016
                        Glenn Stephens Ph.D., Esq.
                        DC Bar No. # 472780
                        Federal Employees Defense, LLC
                        1725 I Street NW, Suite 300
                        Washington, DC 20006
                        202-258-6521
                        Drghs3@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2016, a true, correct copy of the above was e-filed and thereby served upon:

Silvia Diaz, Esq.
Wisler Pearlstine, LLP
PA Bar No. 312435
460 Norristown Road, Suite 110 Blue Bell, PA  19422
(610) 825- 8400
sdiaz@wispearl.com
Attorney for Defendant, Great Valley School District

                                                   Respectfully Submitted,

                                             /S/  *Glenn Stephens*  **12/19/2016**
                                             Glenn Stephens Ph.D., Esq.
                                             DC Bar No. # 472780
                                             Federal Employees Defense, LLC
                                             1725 I Street NW, Suite 300
                                             Washington, DC 20006
                                             202-258-6521
                                             Drghs3@gmail.com