# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY LYN STEVENSON, SR. | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-5933 |
| | : | |
| | : | |
| GREAT VALLEY SCHOOL DISTRICT | : | |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                       **January 16, 2019**

Plaintiff originally brought this matter *pro se* pursuant to Title VII of the Civil Rights Act of 1964, claiming the defendant Great Valley School District (GVSD) provided him with a racially hostile work environment and then took retaliatory actions against him when he complained about the work environment. After the Court approved the application of Plaintiff's brother-in-law, Glenn Stephens, III, Esq., to appear before the Court *pro hac vice* (ECF 10), Plaintiff's attorney was granted leave to file a second amended complaint. (ECF 25).

In the second amended complaint, Plaintiff asserted claims for racial harassment and retaliation under Title VII and the Pennsylvania Human Relations Act ("PHRA"). After Attorney Stephens was terminated as counsel for Plaintiff, Plaintiff filed a notice of intention to proceed *pro se*. (ECF 94.) Nevertheless, the Court directed the Clerk to refer this case to the Court's attorney panel extranet for *pro se* plaintiffs in employment cases and to place the case in suspense for 90 days. (ECF 95.) On April 25, 2017, the Court appointed Gregg L. Zeff, Esq. to represent the Plaintiff and restored the case to the active docket. (ECF 97.) On September 29, 2017, Attorney Zeff filed a motion to withdraw as counsel for Plaintiff, citing irreconcilable

differences. (ECF 111.) On October 26, 2017, the Court granted Attorney Zeff's motion to withdraw as counsel and stayed the action for 60 days in order to allow Plaintiff to secure new counsel. (Doc. 115.) On October 27, 2017, the Court again referred the case to the Court's attorney panel extranet for a period of 60 days. (ECF 116.) When no attorney agreed to represent Plaintiff within the 60-day period, the Court lifted the stay and informed Plaintiff that he would be representing himself in this matter. (ECF 122.) The Court subsequently issued a scheduling order. (ECF 123.) Presently before the Court is GVSD's motion for summary judgment. Plaintiff has not responded to the motion for summary judgment. For the reasons that follow, the motion is granted.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the non-moving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the non-moving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts

the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

When a party fails to respond to a properly filed motion, the Court may treat the motion as uncontested. E.D. Pa. Local R. Civ. P. 7.1(c). In the case of a motion for summary judgment, however, the Court "may not grant an uncontested summary judgment motion without an independent determination that the movant is entitled to judgment under Fed. R. Civ. P. 56." *B&B Fin. Servs. LLC v. Kallock*, No. CIV. A. No. 05-1277, 2006 WL 2869529, at *1 (E.D. Pa. Oct. 4, 2006); *see Hitchens v. County of Montgomery*, 98 Fed. App'x 106, 110 (3d Cir. 2004) (providing the same). Still, "[b]y failing to respond . . . 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *Kallock*, 2006 WL 2869529, at *1 (citing *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003)). Thus, when a party fails to respond, the court may consider the facts stated in the motion for summary judgment "undisputed for the purposes of the motion." *Goodwin v. Kope*, CIV. A. No. 13-1290, 2016 WL 3087389, at *2 (E.D. Pa. June 2, 2016).

**<u>FACTS</u>**

Since Plaintiff has failed to respond to GVSD's motion for summary judgment, the Court will consider the facts stated in the motion as unopposed. Nevertheless, out of an abundance of caution, the Court verified each of GVSD's factual suppositions. The following comprise the Court's statement of undisputed facts ("SUF"):

1. Plaintiff, an African-American, filed a single-allegation complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC") on June 27, 2014. In that complaint, Plaintiff alleged that his supervisor, Principal Edward B. Souders

(Dr. Souders) of the Great Valley Middle School, harassed him on the basis of race and created a hostile work environment, in an e-mail dated April 24, 2014, by "falsely alleging and threatening discipline because the Complainant made comments or engaged in conversations 'in which students were assigned 'ghetto' names.'" See the Complaint PHRC Case No. 201305927 for EEOC No. 17F-2014-61105 (ECF 126-3.)

2. On or about September 4, 2014, Plaintiff filed a multi-allegation complaint with the EEOC against GVSD. See Charge for EEOC No. 530-2014-02490. (ECF 126-4.)

3. Plaintiff is and has been at all relevant times to this matter a Health and Physical Education Teacher within the GVSD. See Deposition Transcript of Anthony Lyn Stevenson, dated October 5, 2016 (ECF 126-5 at 8); Declaration of Edward B. Souders, Ed.d. (ECF 126-6 at ¶ 2.)

4. The professional staff within the GVSD, including Plaintiff, are represented by the Great Valley Education Association ("GVEA"), a local association of the Pennsylvania State Education Association and the National Education Association. See Collective Bargaining Agreement between the GVSD and the Great Valley Association, dated 2009-2013. (ECF 126-7.)

5. The Board of School Directors for GVSD has established policies which prohibit discrimination and harassment, and establish a procedure for resolving employee complaints. See, Board Policy Nos. 104 and 448 (with accompanying regulations). (ECF 126-8.)

6. Policy No. 448 prohibits a district employee from harassing another employee. The Policy defines "harassment" as "any unwelcome, intimidating or derogatory slurs, jokes, comments, communication, conduct or action relating to the race, color, religion, national origin, sex, sexual orientation, gender identity, genetic information, or disability of another individual." (*Id.*)

7. Policy No. 104 states that "[n]o reprisals nor retaliation shall occur as a result of good faith charges of discrimination." (*Id*.)

8. Plaintiff was first hired to work for the GVSD in 2007 as a part-time Health and Physical Education Teacher. Dep. Tr. at NT 9:1-9:10. (ECF 126-5.)

9. In 2009, Plaintiff became a full-time Health and Physical Education Teacher at the Great Valley Middle School. Dep. Tr. at NT 10:4-10:6. (*Id*.)

10. Dr. Souders was the Principal at Great Valley Middle School during the time that Plaintiff worked at the Great Valley Middle School. Dep. Tr. at NT 11:10-11:14. (*Id.*)

## 2011-2012 School Year

11. On April 24, 2012, Kari Willis Allende ("Ms. Allende"), a Caucasian woman and fellow faculty member at the Great Valley Middle School, filed a formal complaint of harassment with the GVSD against Plaintiff. See Dr. Souders' Letter to Anthony Stevenson, dated May 29, 2012. (ECF 126-9.)

12. Upon receiving Ms. Allende's complaint, the GVSD met with both Mrs. Allende and Plaintiff on April 26, 2012, and discussed a "protocol" that the District devised "to avoid any further interaction between [Plaintiff] and Mrs. Allende beyond

what is minimally reasonable to ensure the safety and wellbeing of the students in [their] care and the delivery of the physical education and health curriculums." (*Id.*)

13. During a meeting on April 30, 2012, Plaintiff was given an opportunity to respond to the "series of harassing incidents involving [Plaintiff] and Mrs. Allende that occurred between September of 2009 and April of 2012." (*Id.*)

14. On May 3, 2012, Plaintiff filed a reciprocal complaint of harassment against Ms. Allende for incidents occurring between September, 2009 and April, 2012. See Dep. Tr. at NT 20:9-20:18 (ECF 126-5); see also, (ECF 126-9.)

15. After a May 3, 2012 meeting, both Ms. Allende and Plaintiff decided to voluntarily withdraw their harassment complaints. See Dep. Tr. at NT 20:23-21 :5 (ECF 126-5; 126-9.); see also, May 16, 2012 Email from A. Stevenson to E. Souders re: Complaint. (ECF 126-10.)

16. Plaintiff received a rating of "unsatisfactory" in the area of professionalism for the 2011-2012 school year as a result of what Dr. Souders described as Plaintiff's "unprofessional interactions with Ms. Allende that occurred at times in front of and negatively impacted both [] students and colleagues." Dr. Souders added that "[it] is important to note, that this unsatisfactory rating in professionalism will not negatively impact your overall evaluation." (ECF 126-9.)

17. Despite the "unsatisfactory" rating in professionalism, Plaintiff received an overall "satisfactory" rating for the 2011-2012 school year. See June 11, 2012 Professional Evaluation Form. (ECF 126-11.)

18. Like Plaintiff, Ms. Allende was also given an "unsatisfactory" rating in the area of professionalism for the 2011-2012 school year as "a result of your unprofessional interactions with Mr. Stevenson that occurred at times in front of and negatively impacted both [Ms. Allende's] student's and colleagues." See, May 29, 2012 Memorandum re: Harassment Complaint Summary to Kari Allende from Edward Souders. (ECF 126-12.)

19. The Memoranda placed in the files of Plaintiff and Ms. Allende in summary of the harassment complaints were similar. (Compare ECF 126-9 with 126-12.)

20. At her request, Ms. Allende was subsequently transferred to work at the District's High School for the 2012-2013 school year. See, Ms. Allende's Letter to Mr. Souders requesting a transfer to another building. (ECF 126-13.)

21. On June 26, 2012, Ms. Allende requested that a letter be placed in her personnel file objecting to her "unsatisfactory" rating for professionalism in her 2011-2012 evaluation. See June 26, 2012 Email from K. Allende to Ms. Koslo Stahl re: Evaluation 2011-2012. (ECF 126-14.)

**2012-2013 School Year**

22. At the beginning of the 2012-2013 school year, Dr. Souders received two complaints from parents "regarding an incident where Mr. Stevenson frightened students by using a fake, severed finger to explain the loss of his own finger." (ECF 126-6 at ¶ 12.)

23. On October 9, 2012, Dr. Souders met with Plaintiff to provide him an opportunity to respond to the first complaint. (*Id.* at ¶ 13.)

24. On October 9, 2012, Dr. Souders sent parents an e-mail to apologize for Plaintiff's conduct regarding use of the fake, severed finger. See also, October 9, 2012 Email from Edward Souders to Parent regarding complaint. (ECF 126-15.)

25. After receiving the second parental complaint regarding the fake, severed finger incident, Dr. Souders again met with Plaintiff to address the second complaint. (ECF 126-6 at ¶14.)

26. At this meeting, Plaintiff was directed to contact the parents to set up a meeting to address their concerns, and Plaintiff was made aware of the GVSD's concerns regarding the "inappropriateness of his decision and his lapse in judgment." (*Id.*)

27. Plaintiff talked to the parents who complained about the finger incident. Plaintiff received no further discipline in relation to this incident. See Dep. Tr. at NT 36:4-36:15. (ECF 126-5.)

28. On October 18, 2012, a student was injured while under the supervision of Plaintiff. (ECF 126-6 at ¶ 15.)

29. Dr. Souders conducted a preliminary investigation into the incident, and concluded that Plaintiff provided a student with his keys to close the bleachers in the school gymnasium while Plaintiff made a call to the nurse. When the student closed the bleachers, the lower leg of another student was injured as the sections closed. *(Id.)*

30. Dr. Souders met with Plaintiff, along with his GVEA representative, to allow Plaintiff an opportunity to respond to the bleacher incident. (*Id*. at ¶ 16.)

31. Plaintiff admitted that he had "a kid ...closed the bleachers for [him]", and as the bleacher section was being closed, the section hit the shoe of the other student. Dep. Tr. at NT 30: 14-30:20. (ECF 126-5.)

32. Plaintiff admitted that he was supervising the students in the locker room and in the gym when the incident with the bleacher occurred. Dep. Tr. at NT 31:8-32:4. (ECF 126-5.)

33. On October 19, 2012, Plaintiff sent Dr. Souders an email stating that the incident with the student had been "bothering [him] since", and that he had apologized to the injured student and family. See October 19, 2012 Email from A. Stevenson to E. Souders. (ECF 126-16.)

34. Plaintiff testified that he believes that this incident was "partly" the fault of the injured student, and does not believe that the incident was his fault "at all." Dep. Tr. at NT 30:24- 31:4. (ECF 126-5.)

35. In response to the bleacher incident, Dr. Souders sent Plaintiff a memorandum/letter serving as a written reprimand summarizing concerns over his inability to perform the duty of ensuring the safety and well-being of the students under his supervision and care. See October 19, 2012 Letter from the District to Mr. Stevenson. (ECF 126-17.)

36. The October 19, 2012 Letter also advised Plaintiff that due to his negligence, he would receive a rating of "unsatisfactory" in the area of professionalism and would be evaluated "unsatisfactory" overall. He was also informed that there would be a subsequent evaluation during the 2012-2013 school year. (*Id.*)

37. On October 25, 2012, Dr. Souders issued Plaintiff an overall rating of "unsatisfactory" in the Professional Employee Evaluation form for the 2012-2013 school year. See October 25, 2012 Evaluation. (ECF 128-18.)

38. On December 14, 2012, Dr. Souders, along with William Beyer, the GVEA representative, met with Plaintiff to discuss the implementation of a Professional Improvement Plan ("PIP") as a result of his overall unsatisfactory evaluation and in accordance with the District's evaluation process. See Mr. Souders Letter to Anthony Stevenson, dated December 20, 2012. (ECF 126-19.)

39. On January 17, 2013, Dr. Souders met with Plaintiff to discuss a complaint whereby a teacher was informed by two students that another student felt that Plaintiff had been staring at her chest while she was doing jumping jacks. See January 17, 2013 Email from E. Souders to A. Lonoconus and C. Linderman re: Anthony Stevenson. (ECF 126-20.)

40. On January 17, 2013, Dr. Souders met with Plaintiff and his union representative. Dr. Souders informed Plaintiff that information brought to the administration concerning the jumping jack incident was considered hearsay and that no disciplinary action would result from this incident. See January 17, 2013 Email from E. Souders to A. Stevenson. (ECF 126-21.)

41. On February 1, 2013, a parent/school secretary complained that Plaintiff approached her daughter and asked her if she was the daughter of the school secretary. The parent/secretary also alleged that Plaintiff asked her daughter if her daughter was sent to "spy" on him. After the student responded "no" to the question, Plaintiff admitted that he told the student that he will still need to mind his "P's and Q's." See Dr. Souders' Memorandum to Anthony Stevenson dated February 8, 2013. (ECF 126-22.)

42. The GVSD met with Plaintiff on February 5, 2013, and allowed him an opportunity to respond to the complaint. The District concluded that because there were differing accounts of the conversation there was not sufficient evidence to deem the conversation unprofessional. ( *Id*.)

43. On February 19, 2013, Plaintiff's PIP was revised. <u>See</u> Dr. Souder's Letter to Anthony Stevenson dated February 19, 2013. (ECF 126-23.)

44. On June 14, 2013, Dr. Souders issued Plaintiff another Professional Employee Evaluation Form that rated him "satisfactory" for the remainder of the 2012-2013 school year based on his successful completion of the agreed upon PIP. (ECF 126-6 at ¶ 21); see also Mr. Stevenson's 2012-2013 Professional Evaluation.(ECF 126-24.)

**<u>2013-2014 School Year</u>**

45. On September 4, 2013, Elizabeth Campanese Sargent ("Ms. Sargent"), another Health and Physical Education Teacher at GVMS, submitted to Dr. Souder a complaint of harassment against Plaintiff alleging multiple instances of misconduct that took place on August 30, 2013. See September 4, 2013 Email from Ms. Sargent to Dr. Souders re: Incident. (ECF 126-25.)

46. The GVSD interviewed Plaintiff, Ms. Sargent, and several students and staff members as part of its investigation into Ms. Sargent's complaint.  Ms. Sargent revealed that there were nine other alleged incidents of harassment by Plaintiff that took place between September 2012 and September 2013.  <u>See</u> <u>also</u> Interview Notes from September 6, 2013 Interview with Ms. Sargent and Mr. Stevenson. (ECF 126-26; ECF 126-27.)

47. The District concluded that while it was concerned by the accounts it obtained through its investigation, Ms. Sargent's accounts at the time did not amount to harassment, and were "indeterminable." <u>See</u> October 23, 2013 Letter from Mr. Souders to Mr. Stevenson. (ECF 126-28.)

48. However, Plaintiff was placed on a new PIP "[s]ince this was the second time in two years that a member of [Plaintiff's] department has reported feeling uncomfortable working with [Plaintiff] because of [his] comments, tone, and interactions in front of students . . . " (*Id).*; <u>see</u> <u>also</u>, 2013-2014 Professional Improvement Plan.

49. On March 17, 2014, Plaintiff brought a student to the classroom of a fellow teacher and union representative Sean Whitelock to provide information about comments the student allegedly heard Ms. Sargent make about Plaintiff. Dep. Tr. at NT 68:6-68:22 (ECF 126-5.); see also Summary of Incident by Student for incident occurring on March 14, 2014. (ECF 126-29.)

50. The District became aware of this incident because Plaintiff's union representatives, Bill Beyers and Sean Whitelock, complained to the District. Dep. Tr. at NT 69:10-69:13. (ECF 126-5.)

51. As a result, the District issued Plaintiff a letter of reprimand on April 23, 2014 due to concerns regarding Plaintiff's decision to "inappropriately insert[] a student in a matter between two colleagues by placing the student in front of a third teacher" and his decision to "leave the gymnasium area and locker room unsupervised." The letter also stated that this was not the first time Plaintiff had exercised poor judgment supervising and dealing with students and referenced the bleacher and

severed finger incidents. See Dr. Goffredo Letter to Anthony Stevenson dated April 23, 2014. (ECF 126-31.)

52. The District's April 23, 2014 letter further stated that Plaintiff would receive an "unsatisfactory" rating in the area of Professionalism for the 2013-2014 school year. (*Id.*)

53. After receiving the "unsatisfactory" rating, Plaintiff filed a complaint with the Pennsylvania Labor Relations Board alleging that the GVSD had interfered with his union rights.  Dep. Tr. at NT 70:16-71:1. (ECF 126-5.)

54. On April 23, 2014, a group of students complained to the District administration that they felt "singled out" by Plaintiff and that they "feel it has affected their grades at times." See April 23, 2014 Email from T. Lazar to E. Souders and attached student complaints. (ECF 126-32.)

55. On April 24, 2014, Dr. Souders emailed Plaintiff and Mr. Shaffer, Plaintiff's union representative, to arrange a meeting to investigate complaints from students about alleged conduct by Plaintiff. Mr. Shaffer asked Dr. Souders to provide information about the specifics that would be discussed at the meeting. See Email from Dr. Souders, dated April 24, 2014. (ECF 126-33.)

56. Dr. Souders responded that the meeting was to investigate complaints from students about alleged conduct by Plaintiff.   Dr.  Souders' email contained a list of these concerns that came directly from the students. The list stated,

   1. "Comments/questions toward students in reference to other students as being emotionally stable

   2. Comments referring to students as wimps and/or stupid

   3. Comments/conversations in which students were assigned 'ghetto' names."

(*Id.*)

57. The District met with Plaintiff and with the students, and ultimately determined that there was no basis for discipline or concern. Plaintiff's union representative noted that the "Administration made it clear that they felt obligated to investigate even though from the outset the statements appeared benign." See May 2, 2014 Email from C. Shaffer to E. Souders and D. Goffredo re: April 28 Meeting. (ECF 126-34.)

58. Confirming the email from Plaintiff's union representative, the District found that these student complaints were "unsubstantiated" and Plaintiff received no discipline in relation to these complaints. See Summary of Independent Investigative Report of Susan Tiede, dated May 13, 2014. (ECF 126-35.)

59. By letter dated April 24, 2014 Plaintiff requested to be transferred out of the GVMS. (ECF 126-6.).

60. On April 27, 2014, Plaintiff submitted a formal harassment complaint to Dr. Robin Koslo-Stahl, the Assistant Superintendent for the GVSD. The harassment complaint alleged that Dr. Souders had used a racial slur - "ghetto"- to describe Plaintiff's alleged workplace conduct. See April 27, 2014 Email from Mr. Stevenson to Ms. Koslo-Stahl re: Act#448. (ECF 126-38.)

61. The District retained an independent, outside professional, Susan Tiede, to investigate Plaintiff's complaint against Dr. Souders. (*Id.*)

62. Ms. Tiede met with Plaintiff and asked for his side of the story. Dep. Tr. at NT 83:12-83:24. (ECF 126-5.)

63. On May 13, 2014, Ms. Tiede submitted her Summary of Independent Investigative Report of Plaintiff's complaint ("Investigative Report") to the Superintendent. (ECF 126-35.) The Investigative Report was shared with both Plaintiff and Dr. Souders. *Id*.; see also, May 13, 2014 Email from R. Koslo-Stahl to A. Stevenson. (ECF 126-39.)

64. Ms. Tiede concluded that the harassment complaint made by Plaintiff against Dr. Souders was "unfounded," as the term "ghetto" used by Dr. Souders in his email originated from the students' report of their concerns, and was a direct quotation of the students' complaint. (ECF 126-35.)

65. On May 29, 2014, Ms. Koslo-Stahl emailed Plaintiff regarding his numerous emails and the filing of a new complaint against Ms. Sargent under District Policy and Procedure No. 448. See May 29, 2014 Email to/from R. Koslo-Stahl and A. Stevenson. (ECF 126-40.)

66. On May 30, 2014, Plaintiff emailed Ms. Koslo-Stahl to notify her that he wanted to file a "448" against Ms. Sargent. See May 30, 2014 Email from A. Stevenson to R. Koslo-Stahl. (ECF 126-41.)

67. On June 3, 2014, Plaintiff submitted a complaint against Ms. Sargent under District Policy and Procedure No. 448. See June 5, 2014 Email and attachment from A. Stevenson to R. Koslo-Stahl. (ECF 126-42.)

68. On June 5, 2014, Plaintiff emailed Ms. Koslo-Stahl asking who will be investigating his "448" complaint, and whether they are certified to investigate EEO or PHRC discrimination claims. (ECF 126-43.) Ms. Koslo-Stahl responded

that she would be investigating his internal complaint, in accordance with District policy. See June 9, 2014 Email from R. Koslo-Stahl to A. Stevenson. (*Id.*)

69. On June 8, 2014, Plaintiff emailed Ms. Koslo-Stahl and referred to the District's last investigation of his complaint against Dr. Souders as a "joke," demanded that Ms. Koslo-Stahl and the assistant principal of the Great Valley Middle School, Amanda Pierce, not investigate his "448" complaint, and indicated that he would withdraw his "448" complaint if Koslo-Stahl and Pierceey conducted the investigation. See June 8, 2014 Email from A. Stevenson to R. Koslo-Stahl. (ECF 126-44.)

70. On June 12, 2014, Plaintiff emailed Ms. Koslo-Stahl requesting that the District use a certified trained discrimination complaint investigator to investigate his "448" complaint. See June 12, 2014 Email from A. Stevenson to R. Koslo-Stahl. (ECF 126-45.)

71. On June 12, 2014, Plaintiff's union representative sent the District a letter confirming that Plaintiff had successfully completed his latest PIP. See June 12, 2014 Letter from D. Goffredo to C. Shaffer. (ECF 126-46.)

72. On June 19, 2015, Plaintiff received a rating of "satisfactory" in the Teacher Rating Form for the 2014-2015 school year. See Classroom Teacher Rating Form. (ECF 126-47.)

73. On June 24, 2014, the District provided Plaintiff with a letter stating that because his June 3, 2013 complaint against Ms. Sargent was not based on conduct or action

against Plaintiff related to race, the complaint did not rise to discrimination under Policy 448. (ECF 126-48.)

74. On June 27, 2014, Plaintiff emailed Ms.Koslo-Stahl with his objections with the District's June 24, 2014 Letter.

75. On July 15, 2014, Plaintiff filed a complaint against Ms. Sargent under Policy No. 417. Ms. Koslo-Stahl responded on July 23, 2014 that complaints under Policy 417 require that the employee first discuss the complaint with the school principal or immediate supervisor, and directed Plaintiff to contact Mandy Pierce, Assistant Principal at Great Valley Middle School. <u>See</u> July 15 and July 24, 2014 Emails to/from A. Stevenson and R. Koslo-Stahl. (ECF 126-49.)

76. On July 10, 2014, the District granted Plaintiff's request for a transfer to an elementary position for the 2014-2015 school year. <u>See</u> July 10, 2014 Letter to Plaintiff. (ECF 126-50.)

77. On August 23, 2015, the parties entered a Settlement Agreement to resolve Plaintiff's complaint with the Pennsylvania Labor Relations Board. As a result of that Agreement, all reference to the March 14, 2014 incident as well as the April 23, 2014 written reprimand were removed from Plaintiff's personnel file. <u>See</u> August 28, 2015 Letter to Mr. Anthony Stevenson from Robin D. Koslo-Stahl, Ed. D. (ECF 126-51.)

**<u>Lack of Evidence Provided by Plaintiff.</u>**

81. Plaintiff admitted that during the entire time that he has been a full-time employee at the GVSD he has never been suspended from his job without pay, has never

been denied a raise and has never sought a promotion. Dep. Tr. at NT 16:4- 16:22. (ECF 126-5.)

82. Plaintiff admitted that he did not know whether Ms. Allende also received an "unsatisfactory" rating in professionalism on her evaluation for the 201 1-2012 school year. Dep. Tr. at NT 23:6-23:15. (*Id.*)

83. Plaintiff admits that he agreed to withdraw his complaint against Ms. Allende because his union representative, not the GVSD, suggested that he withdraw it. Dep. Tr. at NT 64:24-65:25. (*Id.*)

84. When asked at his deposition what employment consequences he suffered, other than being placed on an improvement plan for the fake finger incident, Plaintiff testified that he "can't recall at the moment." Dep. Tr. at NT 40:4-40:7. (*Id.*)

85. Plaintiff admitted that he is not aware of any other teacher who in the course of allowing students to close the bleachers had a student who became injured. Dep. Tr. at NT 41 :6-41:9. (*Id.*)

86. When asked whether he was aware of any teacher who has had allegations made against them by students, regardless of what they were, where the allegations were not investigated, Plaintiff responded that he could not recall. Dep. Tr. at NT 81:3-81:7. (*Id.*)

87. Plaintiff believes he was being retaliated against for the complaints he brought against Ms. Allende and Ms. Sargent, but admits that the people who told him not to speak about these incidents were his union members. Dep. Tr. at NT 90: 10- 91 :4. (*Id.*)

88. Plaintiff testified that he was not aware of any other teachers in the District who have received PIPs and that he has never examined any PIPs that any other teachers from GVSD may have received. Dep. Tr. at NT 92:5-92:11. (*Id.*)

89. Plaintiff testified that he believes that any attempt by the GVSD to improve his job performance is discriminatory. Dep. Tr. at NT 92:12-92:15 .(*Id.*)

90. Plaintiff admits that he has no factual evidence indicative of his contention that parents and students who made complaints against him were cooperating with the professional staff members of GVSD who made complaints against him. Dep. Tr. at NT 92:16-25. (*Id.*)

91. Plaintiff admits he has no evidence that he was assigned to be supervised by Mr. Hammond, an African-American male, solely in an effort to make the GVSD's attempt to chase him out look less racist. Dep. Tr. at NT 97: 1-98:8. (*Id.*)

## **DISCUSSION**

The GVSD first argues that many of the incidents that comprise Plaintiff's Title VII claims are time-barred. It is well-settled that "[t]o bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel v. M & Q Packaging Corp.* (3d Cir. 2013). Therefore, since EEOC Charge No, 530-2014-02490 was filed on September 4, 2014, the cut-off date for any claims under this charge would be 300 days earlier on November 8, 2013. Complicating the matter is that the actions occurring before November 8, 2013 may nevertheless be allowed to proceed if Plaintiff can show that they are part of a continuing violation. Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice,

an action is timely so long as the last act evidencing the continuing practice falls with the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred. *Cowell v. Palmer Twp.*, 263 F. 3d 286, 292 (3d Cir. 2001). Fortunately, because both counts of Plaintiff's second amended complaint can readily be disposed of on the merits, the Court need not consider the issue of whether some of the incidents that occurred before November 8, 2013 survive the statute of limitations under the continuing violation theory.

Plaintiff first claims he was subjected to a hostile work environment based on race. To establish a *prima facie* hostile work environment claim based on race under Title VII and the PHRA, a plaintiff must show: (1) the employee suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability. *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). The Supreme Court has directed courts "to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

With regard to the first element, other than his own subjective belief, Plaintiff provides no evidence whatsoever from which a reasonable jury could infer that the incidents he complains of were the result of any intentional racial discrimination by the GVSD.

The only incidents Plaintiff received any meaningful discipline for were the severed finger incident, the bleacher incident and the incident in which Plaintiff interjected a student into his dispute with Ms. Sargent. There is no evidence in the record from which a reasonable jury could conclude that the complaints arising from these incidents had anything to do with Plaintiff's race. Rather, the record shows that the incidents were the result of a lack of professional judgment on the part of Plaintiff in the execution of his duties. That Plaintiff claims the complaints arising from these incidents were based on his race is not surprising, however, given Plaintiff's testimony that he would consider *any* attempt by the GVSD to improve his job performance to be discriminatory. SUF at ¶ 93.

Plaintiff and Ms. Allende, a Caucasian female, received the exact same discipline for their reciprocal complaints of harassment – a rating of "unsatisfactory" for professionalism for the 2011-2012 school year. Plaintiff nevertheless received on overall rating of "satisfactory" for the 2011-2012 school year. Dr. Souders found the charge in the jumping jack incident was based on hearsay and did not discipline Plaintiff. Plaintiff was also not disciplined for allegedly asking the secretary's daughter if she was spying on him due to conflicting accounts. The students' complaints against Plaintiff in April, 2014 were rejected as "unsubstantiated", and Ms. Sargent's harassment complaint filed against Plaintiff in September, 2013 was also dismissed by the District as "undeterminable." See SUF at ¶¶ 33, 46, 48, 53, 58, 64, 65. In addition, as a result of a settlement agreement between the parties concerning Plaintiff's complaint filed with the Pennsylvania Labor Relations Board, all reference to the March 14, 2014 incident in which Plaintiff inserted a student into the dispute with Ms. Sargent as well as the April 23, 2014 written reprimand that followed were removed from Plaintiff's personnel file. SUF at ¶ 77. On June 14, 2013, Dr. Souders issued Plaintiff another Professional Employee Evaluation Form that rated

him "satisfactory" for the remainder of the 2012-2013 school year based on his successful completion of the agreed upon PIP. SUF at ¶ 44. On June 19, 2015, Plaintiff received a rating of "satisfactory" in the Teacher Rating Form for the 2014-2015 school year as a result of successfully completing his latest PIP. SUF ¶¶ 71-72.

The record contains only one incident that could even remotely be construed as racial in nature---the incident in April 2014 during which Dr. Souders used the phrase "ghetto names" in quotation marks in an email when explaining, at the request of Plaintiff s union representative, what specific complaint had been brought by students against Plaintiff. Plaintiff found the comment to be racially offensive despite the fact that Dr. Souders used the term in quotation marks to show that he was directly quoting the students' complaints. SUF at ¶ 72. Indeed, Ms. Tiede concluded that the harassment complaint made by Plaintiff against Dr. Souders was "unfounded", as the term "ghetto" originated from the students' report of their concerns, and was a direct quotation of the students' complaint. (ECF 126-35.)

Even if Plaintiff could somehow convince a jury that he was the victim of intentional racial discrimination, there is no evidence from which a reasonable jury could conclude that the discriminatory conduct was "severe and pervasive." The threshold for pervasiveness and regularity of discriminatory conduct is high. A hostile work environment is actionable under Title VII only if it is so severe and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). The environment must be objectively hostile, not just hostile in the plaintiff's view. See *Harris*, 510 U.S. at 21. Whether an environment is sufficiently hostile or abusive is determined by considering the totality of the circumstances, including the "frequency of the conduct; its severity, and whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Breeden*, 532 U.S. at 271 (quotation marks and internal citations omitted). "Isolated incidents" of harassment will not qualify as "pervasive and regular," id., nor will the "'utterance of an . . . epithet which engenders offensive feelings in an employee.'" *Lawrence v. F.C. Kerbeck & Sons*, 134 Fed. App'x 570, 572 (2005) (citing *Faragher  v. City of Boca Raton* 524 U.S. 775, 787 (1998)).

Again, the *only* incident that could remotely relate to racial issues occurred in 2013-2014 and involved Dr. Souders' direct quote of the term "ghetto names". This term was used in a student report and was repeated in an email Dr. Souders sent to Plaintiff.  Moreover, even if the term as quoted by Dr. Souders could be found to be derogatory in nature, the term wasn't Dr. Souders's term, and there is no evidence in the record that racial slurs or derogatory language were a common and accepted occurrence in the GVSD.

Plaintiff s evidence falls way short of meeting the threshold of pervasive and regular misconduct necessary to satisfy his burden. Plaintiff fails to show how the GVSD's actions support his claim that his workplace was "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21 (quoting Meritor, 477 U.S. at 67).

Since Plaintiff has failed to satisfy the first two elements for a prima facie case of a racially hostile work environment, summary judgment will be entered in favor of the GVSD on Count One of the second amended complaint.

The GVSD also seeks summary judgment on Plaintiff's claim for retaliation. In order to establish a *prima facie* case of retaliation under Title VII and the PHRA, a plaintiff must show that (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse

employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006). Plaintiff must prove that he would not have suffered the adverse actions but for his protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). "If the employee establishes this *prima facie* case of retaliation, . . . 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997)); *McDonnell Douglas Corp. v. Green*, 59 U.S. 792 (1973).

With regard to the first element, the only instances of protected activity Plaintiff engaged in were the filing of the reciprocal harassment charge against Ms. Allende, the April 27, 2014 harassment complaint against Dr. Souders, the June 3, 2014 harassment charge against Ms. Sargent and the July 15, 2014 harassment charge against Ms. Sargent.

With regard to the second element, an "adverse employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (quoting *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007) (internal quotations omitted)). Plaintiff carries the burden of demonstrating that the GVSD's alleged actions against him amounted to an adverse employment

action to form the basis of his retaliation cause of action. See *Colon–Fontanez v. Municipality of San Juan*, 660 F.3d 17, 42 (1st Cir. 2011).

Here, Plaintiff himself admits that during the entire time that he has been a full-time employee of the GVSD he has never been suspended from his job without pay and has never been denied a raise. SUF at ¶ 85. The only "detriment" that Plaintiff alleges he experienced was in the form of being given an "unsatisfactory" rating in professionalism in April 2012 as a result of the negative interactions between him and Ms. Allende, his "unsatisfactory" rating in October 2012 after an incident where the District determined that a student had been injured while under Plaintiff's supervision, being placed on a PIP in October 2012 as a result of the same incident, and being placed on another PIP in October 2013 due to ongoing concerns about his interactions with students. Plaintiff also refers to receiving a written reprimand in April 2014 after his union representative complained to the District that Plaintiff had inappropriately inserted a student into a disagreement between Plaintiff and Ms. Sargent.

None of these actions constitute adverse employment actions. While Plaintiff was given an "unsatisfactory" rating in the area of professionalism in 2011-2012, Plaintiff was informed that the unsatisfactory rating in professionalism would "not negatively impact [his] overall evaluation," and indeed he ultimately received an overall satisfactory evaluation rating for the 2011-2012 school year. SUF at ¶ 23. Similarly, while he initially received an overall rating of "unsatisfactory" in October 2012 as a result of the bleacher incident, he was ultimately rated "satisfactory" in his overall evaluation for the 2012-2013 school year after successfully completing his PIP. SUF at ¶ 50. Lastly, while a written reprimand alone is insufficient to be considered an adverse employment action, even if it were found to be sufficient, Plaintiff's written reprimand was removed from his file in August 28, 2014,

pursuant to a Settlement Agreement between the parties concerning Plaintiff's complaint with the Pennsylvania Labor Relations Board. SUF at ¶ 84.

In short, Plaintiff was never suspended, demoted, did not have his work schedule changed, was not reassigned to a different position or location until he requested to do so, did not have his hours or work changed or altered in any way, and was not denied any pay raise or promotion as a result of these reprimands. Additionally, any reprimands were not permanently affixed to Plaintiff's employment file, and therefore cannot have changed or altered his employment status in any way. Plaintiff cannot show any effect on compensation, terms, conditions or privileges of employment. Plaintiff fails to establish how receiving an unsatisfactory rating when he was eventually rated satisfactory at the end of the school year effects a material change in the terms or conditions of his employment. Likewise, Plaintiff fails to show how placement in a PIP, the first of which he successfully completed by the end of the 2012-2013 school year, and the second of which he completed by the end of the 2013-2014 school year, can be characterized as an adverse employment action. Lastly, the written reprimand had no detrimental effects in the conditions of employment since it was subsequently removed from his file.

Finally, even if Plaintiff could be said to have suffered an adverse employment action, there is not a scintilla of evidence in the record from which a reasonable jury could find that such adverse actions resulted from Plaintiff engaging in protected activity as opposed to from his own lapses of judgment. Accordingly, judgment will be entered in favor of the GVSD on Count two of Plaintiff's second amended complaint.